UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| REAL PROPERTY LOCATED AND | § | |
| SITUATED AT 6944 RED PINE STREET, | § | |
| BROWNSVILLE, CAMERON COUNTY, | § | |
| TEXAS | § | |
|     Defendant. | § | |

VERIFIED COMPLAINT FOR CIVIL FORFEITURE
IN REM AND NOTICE TO POTENTIAL CLAIMANTS

The United States of America, Plaintiff, files this action for forfeiture *in rem* and alleges upon information and belief the following:

JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355(b), 1391(b)(2), and 1395.

DEFENDANT PROPERTY SUBJECT TO FORFEITURE

3. The Defendant (hereinafter "Defendant Property") is the real property, improvements, and appurtenances, located at 6944 Red Pine Street, Brownsville, Texas, and legally described as:

> *LOT FORTY-EIGHT (48), BLOCK ELEVEN (11), VILLA LOS PINOS SUBDIVISION, SECTION IV, IN THE CITY OF BROWNSVILLE, CAMERON COUNTY, TEXAS, ACCORDING TO THE MAP OF SAID SUBDIVISION RECORDED IN CABINET 1, SLOT 2222-A, MAP RECORDS OF CAMERON COUNTY, TEXAS.*

4. The Defendant Property is located in the Southern District of Texas.

5.     The Defendant Property is registered to Yolanda Magallanes-Nunez[1]—an indicted fugitive from justice.[2]

## STATUTORY BASIS AND NATURE OF ACTION

6.     The United States alleges that the Defendant Property constitutes the proceeds of and is property traceable to concealing and harboring noncitizens[3] for the purpose of commercial advantage and private financial gain. The United States further alleges that the Defendant Property is involved in and is traceable to money laundering and operating an unlicensed money transmitting business.

7.     This civil action in rem is brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 (the laundering of monetary instruments) or 1960 (prohibition of unlicensed money transmitting businesses), or any property traceable to such property.

8.     This civil action *in rem* is brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense. A violation of 8 U.S.C. § 1324 (bringing in and harboring certain [noncitizens] (committed for the purpose of commercial advantage and financial gain)) is "specified unlawful activity" pursuant to 18 U.S.C. § 1956(c)(7)(A) as "racketeering activity" defined by 18 U.S.C. § 1961(1)(F).

---

[1] Yolanda Magallanes-Nunez (hereinafter "Magallanes-Nunez") is also known as Yolanda Magallanes.
[2] Indictment at 1-5, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX April 3, 2018) ECF No. 1 [Hereinafter referred to as Indictment].
[3] This complaint uses the word "noncitizen" in place of "alien." The United States nevertheless intends the same statutory definition as provided under 8 U.S.C. § 1101(a)(3).

2

9. This civil action *in rem* is also brought to enforce the provision of 8 U.S.C. § 1324(b)(1), which provides for the seizure and forfeiture of the gross proceeds, and any property traceable to such conveyance or proceeds, of a violation of 8 U.S.C. § 1324(a).

## FACTS

10. The Defendant Property is subject to criminal forfeiture in *United States of America v. Magallanes-Nunez*.[4] The registered owner, Magallanes-Nunez, absconded from the Rio Grande Valley into Mexico and has not yet been apprehended. As a result, the United States of America seeks now to forfeit the Defendant Property *in rem*.

11. A vast, international network of criminal enterprise operates along the Southern U.S. Border that profits from smuggling noncitizens from Mexico to the United States of America in violation of the Immigration and Nationality Act. The network accepts payment in exchange for unlawful passage into, and illicit harbor inside of, the United States of America.

12. These payments often are made and accepted in cash. In doing so, smuggling groups risk detection and seizure by law enforcement along the southern United States border. To lower that risk, smuggling groups often utilize money transmitting businesses like MoneyGram and Western Union to wire funds internationally.

13. Another strategy these groups employ is to make structured deposits into one bank account from multiple geographic locations while separate members of the group make rapid corresponding withdrawals from the same account in completely different locations.[5] The account holder, for their part in the scheme, keeps a percentage of the criminally derived proceeds.

---

[4] United States Supplement to Notice of Forfeiture in Indictment at 1-2, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX December 16, 2020) ECF No. 225 [Hereinafter referred to as Supplement to the Notices of Forfeiture].
[5] This strategy is referred to as "funneling," and the account used is referred to as a "funnel account."

14. From January 3, 2007 at the latest to July 19, 2016, Magallanes-Nunez conspired with others to transport and harbor noncitizens in the United States, conspired with others to launder criminally derived proceeds, and operated an unlicensed money transmitting business to promote and support unlawful activity.

15. During that time, Magallanes-Nunez worked in conjunction with co-conspirators to secret noncitizens from Mexico. Co-conspirators transported the noncitizens across the border to a Brownsville, Texas residence. There, Magallanes-Nunez concealed, harbored, and shielded the noncitizens from detection until co-conspirators transported the noncitizens elsewhere.

16. At the same time, Magallanes-Nunez operated a funnel account for a human smuggling group knowing the deposits were made as payment for that illegal activity. Magallanes-Nunez accepted high-volume wires and cash deposits from various domestic states and foreign countries unrelated to any legitimate business activity.[6] Soon after funds deposited into Magallanes-Nunez's account, Wells Fargo records show prompt withdrawals of similar but lesser in total amounts at branch locations throughout the United States and abroad.[7] The left-over funds remained in the Wells Fargo account as payment for Magallanes-Nunez's role in the scheme.

| **Account Type** | **Deposit Amount** | **Transaction Volume** |
|---|---|---|
| Wells Fargo Account ending in 7817 | $76,485.00 | At Least 36 Unexplained Cash Deposits |

---

[6] According to the Texas Workforce Commission, Magallanes-Nunez has no recorded business activity in the State of Texas.
[7] No record exists showing that Magallanes-Nunez acquired a Federal License nor a license in the state of Texas to operate a money transmitting business.

17. Similarly, Magallanes-Nunez received numerous money wires through MoneyGram and Western Union. Magallanes-Nunez withdrew the wires as cash, delivered the funds to co-conspirators, and kept a portion as payment.

| Account Type | Deposit Amount | Transaction Volume |
|---|---|---|
| MoneyGram | $75,043.54 | At Least 70 Wires |
| Western Union | $65,325.92 | At Least 64 Wires |

18. Magallanes-Nunez actively and successfully recruited others to do the same. Altogether, Magallanes-Nunez and the co-conspirators grossed at minimum approximately $1,296,268.41 from January 3, 2007 to July 19, 2016.

19. With proceeds from the conspiracy, Magallanes-Nunez paid for and maintained the Defendant Property. Magallanes-Nunez acquired a loan to purchase the Defendant Property in 2005 for approximately $45,000.00, excluding interest. The amortization schedule for the loan required payments of $600.00 per month. Magallanes-Nunez made these payments in cash, often infrequently and for varying amounts.[8] Including taxes, liens, and interest, Magallanes-Nunez paid approximately $69,282.94 for the property.[9]

20. On or about April 3, 2018, a federal grand jury in the Southern District of Texas returned a three-count indictment for Magallanes-Nunez along with six other defendants.[10]

21. Count One charges, in summary, that Magallanes-Nunez and six other defendants knowingly and willfully conspired with others to attempt to transport, move, conceal, harbor, and shield

---

[8] Law enforcement obtained loan records from the lending financial institution. The financial institution, however, did not supply records from 2005 through June 2007. The earliest obtained records show a principal balance of $41,455.61 on July 31, 2007 with payments thereafter.
[9] Notably, the property was appraised for $124,389.00 in 2021.
[10] Indictment at 1-5.

5

from detection a noncitizen in furtherance of said noncitizen's illegal presence in the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(l) and 1324(a)(1)(B)(i).

22. Count Two charges, in summary, that Magallanes-Nunez and the six other defendants conspired to launder illicit proceeds to further the criminal activity of bringing in and harboring a noncitizen, in violation of 18 U.S.C. § 1956(h).

23. Count Three charges, in summary, that Yolanda Magallanes-Nunez and other defendants did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business, through the use for a fee of a Wells Fargo account, in that the business affected interstate and foreign commerce and that the defendants knew the funds were derived from a criminal offense and were intended to be used to promote and support unlawful activity, in violation of 18 U.S.C. §§ 1960 and 2.

24. The same grand jury found probable cause for multiple notices of forfeiture.[11] The first notice of forfeiture states that all property involved in and traceable to a violation of 18 U.S.C. §§ 1956 or 1960 is subject to forfeiture.[12] The second notice of forfeiture states that all property that constitutes, is derived from, or is traceable to the proceeds and all property used to facilitate or is intended to be used to facilitate a violation of 8 U.S.C. § 1324(a)(1) is subject to forfeiture.[13] The Defendant Property here is listed as subject to forfeiture.[14]

25. The six other defendants pleaded guilty to Count Two of the indictment.[15] Each convicted defendant admitted that they, along with Magallanes-Nunez, committed the following:

---

[11] *Id.* at 4-5 (Notices of Forfeiture).
[12] *Id.* at 4.
[13] *Id.* at 4-5.
[14] Supplement to the Notices of Forfeiture at 1-2.
[15] Judgment as to Bertha Alicia Magallanes at 1, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX September 10, 2018) ECF No. 164; Judgment as to Paloma Garcia at 1, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX October 5, 2018) ECF No. 177; Judgment as to Rosa Maria Alvarado-Munoz at 1, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX September 15, 2018) ECF No. 179; Judgment as to Jose Alfredo Magallanes at 1, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX November 14, 2018) ECF No. 199;

(a) they utilized their bank accounts or money wire services to receive United States currency in furtherance of human smuggling activity;[16]

(b) they participated in a conspiracy to violate Title 18, United States Code, Section 1956 grossing approximately $1,296,268.41 to further a conspiracy to harbor and transport noncitizens into the United States;[17]

(c) they gave their personally identifiable information to unknown co-conspirators throughout the United States and abroad who utilized Western Union or MoneyGram to send to them noncitizen smuggling fees;[18]

(d) they withdrew the wires as cash, delivered the cash to unindicted co-conspirators, and kept a portion for personal financial gain;[19]

(e) excluding Bertha Alicia Magallanes and Jose Alfredo Magallanes, they gave their personal Wells Fargo account numbers to individuals throughout the United States and abroad to deposit and transmit smuggling proceeds through their bank accounts for a fee.[20]

---

Judgment as to Jesus Magallanes at 1, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX November 14, 2018) ECF No. 201; Judgment as to Veronica Ofelia Magallanes at 1, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX December 11, 2018) ECF No. 208.

[16] Plea Agreement as to Bertha Alicia Magallanes at 9, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX May 25, 2018) ECF No. 93; Plea Agreement as to Paloma Garcia at 9, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX June 20, 2018) ECF No. 113; Plea Agreement as to Rosa Maria Alvarado-Munoz at 9, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX June 26, 2018) ECF No. 117; Plea Agreement as to Jose Alfredo Magallanes at 9, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX July 31, 2018) ECF No. 135; Plea Agreement as to Jesus Magallanes at 9, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX August 1, 2018) ECF No. 140; Plea Agreement as to Veronica Ofelia Magallanes at 9, *United States v. Yolanda Magallanes-Nunez*, No. 1:18-cr-225 (SDTX August 31, 2018) ECF No. 158 [Hereinafter, collectively, "Plea Agreements"].

[17] Plea Agreements, *supra* note 14, at 9-10.
[18] Plea Agreements, *supra* note 14, at 10.
[19] Plea Agreements, *supra* note 14, at 10.
[20] Plea Agreements, *supra* note 14, at 10.

(f) they did not have a banking license from the State of Texas, nor were they registered with the federal government to operate a money transmitting business, in violation of Title 18, United States Code, Section 1960.[21]

(g) they knew the funds sent to their accounts were proceeds from criminal activity and acceptance of the money and delivering it to another was intended to promote and support the unlawful criminal activity.[22]

## CONCLUSION

26. Under the totality of the circumstances, it is believed that the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to the bringing in and harboring certain noncitizens committed for the purpose of commercial advantage and financial gain, pursuant to 18 U.S.C. § 981(a)(1)(A) as property traceable to a violation of 18 U.S.C. §§ 1956 and 1960, and pursuant to 8 U.S.C. § 1324(b)(1) as proceeds and property traceable to a violation of 8 U.S.C. § 1324(a).

## NOTICE TO ANY POTENTIAL CLAIMANTS

YOU ARE HEREBY NOTIFIED that if you assert an interest in the Defendant Property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A verified claim must be filed no later than thirty-five (35) days from the date this Complaint has been sent.

An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas either electronically or at the United States

---

[21] Plea Agreements, *supra* note 14, at 10.
[22] Plea Agreements, *supra* note 14, at 10.

Courthouse, 600 E. Harrison St., #101, Brownsville, TX 78520. A copy must be served upon the undersigned Assistant United States Attorney at the United States Attorney's Office, 600 E. Harrison St., #201, Brownsville, Texas 78520.

## REQUESTED RELIEF

The United States will serve notice, along with a copy of the Complaint, on any person who reasonably appears to be a potential claimant in this matter. The United States seeks a final judgment forfeiting the Defendant Property to the United States and any other relief to which it may be entitled.

Respectfully submitted,

JENNIFER LOWERY
United States Attorney

By:   /s/ Rick Blaylock
Rick Blaylock
SDTX Federal No. 3544108
Assistant United States Attorney
600 E. Harrison St., #201
Brownsville, Texas 78520
Telephone (956) 566-2132

## VERIFICATION

I, Garrett Corley, a Special Agent with Homeland Security Investigations, declare under penalty of perjury, as provided by 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in paragraphs 1 through 26 of this Complaint are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation. Those facts are true and correct to the best of my knowledge and belief.

Executed on the 11th day of January 2022.

_____
Garrett Corley
Special Agent
Homeland Security Investigations